UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENOVATE AMERICA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LLOYD'S SYNDICATE 1458,<br><br>Defendant. | Case No.: 3:19-cv-01456-GPC-WVG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**<br><br>**[ECF No. 10]** |

Before the Court is the Defendant Lloyd's Syndicate 1458's ("Lloyd's" or "Defendant") motion to dismiss the complaint. ECF No. 10. Renovate America, Inc. ("Renovate" or "Plaintiff") filed an opposition on October 15, 2019. ECF No. 12. Defendant filed a reply on October 22, 2019. ECF No. 14. For the reasons discussed below the Court **DENIES** Defendant's motion to dismiss.

## BACKGROUND

Renovate is a Delaware corporation with its headquarters in San Diego, California. ECF No. 1 ("Complaint") ¶ 5. Renovate provides services for homeowners, including the administration of residential Property Assessed Clean Energy programs for government entities under the Home Energy Renovation Opportunity ("HERO") program. *Id.* ¶¶ 5, 10. As part of its insurance portfolio, Renovate maintains a professional liability insurance covering liabilities that it may face based on its administration of loan programs. *Id.* ¶ 11. Lloyd's, through its agent Euclid, issued the

relevant professional liability policy to Lloyd's with a policy period of at least May 27, 2017 to May 27, 2018 (the "Policy"). *Id.* ¶ 12.

Plaintiff filed the Complaint on August 2, 2019. ECF No. 1. According to the Complaint, the Policy covers costs that Renovate would incur from defending against claims for, *inter alia*, "actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act." *Id*. ¶ 13. Plaintiff alleges that the Policy requires Lloyd's to pay defense costs while the underlying claims are being litigated. *Id*. ¶ 15. Under the Policy, coverage is limited to $2,500,000 and Renovate assumes a $250,000 retention, which increases to $500,000 for class actions. *Id.* ¶ 13, 14. Any defense costs incurred by Renovate count against the retention amounts. *Id.* ¶ 14.

Between January of 2018 and April of 2018, Renovate was served in two separate lawsuits in California state court (the "Underlying Actions"): *All Pro Installation v. Claude Rowe et al.*, Case No. 37-2016-00042327, California Superior Court, County of San Diego (the "*Rowe* Action") and *Reginald Nemore et al. v. Renovate America, Inc.*, Case No. BC701810, California Superior Court of California, County of Los Angeles (the "*Nemore* Action"). *Id.* ¶¶ 18, 19. In the *Rowe* Action, defendants served a cross-complaint on Renovate on January 23, 2018 for alleged elder abuse and other harms due to Renovate's administration of the HERO programs. *Id.* ¶ 18. In the *Nemore* Action, the plaintiffs served Renovate on April 16, 2018, and in their complaint they allege that participants of the HERO programs also suffered elder abuse and various other harms due to Renovate's administration of the program. *Id.* ¶ 19.

On April 14, 2018 and May 1, 2018 respectively, Renovate tendered both *Nemore* and *Rowe* actions to Lloyd's, seeking full coverage including payment of their defense costs. *Id.* ¶ 20. Lloyd's did not reply to Renovate within 40 days, which Renovate alleges is the applicable period for coverage determinations. *Id.* ¶ 21. Renovate selected defense counsel and paid for its own defense costs. *Id.* Renovate also used a broker to prod Lloyd's to provide a response and pay for the defense costs incurred by Renovate. *Id.* ¶¶ 22-23. Lloyd's first responded in November of 2018 by letters through counsel

that acknowledged that the Underlying Actions raised the potential for coverage under the Policy, but stated that rates of Renovate's defense counsel raised issues. *Id.* ¶ 25-26. After Lloyd's reviewed the defense counsel invoices, Lloyd's stated that it would not pay full rates for the defense counsel services and that it may also take other deductions on the invoices. *Id.* ¶ 28.

By June 21, 2019, Renovate incurred over $750,000 in costs ($500,000 in excess of the applicable retention) from defending the *Rowe* action, and over $570,000 in costs ($70,000 in excess of the applicable class action retention) from defending the *Nemore* action. *Id.* ¶ 31. At this time, Lloyd's informed Renovate that it would reduce the invoices and apply other deductions, and ultimately pay $70,000 for the Rowe action but pay nothing for the *Nemore* action. *Id.* ¶¶ 31, 33. Renovate contested Lloyd's proposed deductions and requested that Lloyd's provide an accounting of the deductions. *Id.* ¶ 34. Renovate also stated that they still expected Lloyd's to pay the $70,000 for the *Rowe* action, and Lloyd's said that they would make a partial payment within the next one to two weeks. *Id.* ¶ 34. As of the date of filing of the Complaint, Renovate had not received any payment from Lloyd's. *Id.* ¶ 35.

Renovate alleges claims for breach of contract and breach of covenant of good faith and dealing, and seeks declaratory relief and to recover the costs incurred for defense counsel's services arising from the *Nemore* and *Rowe* litigations. Renovate additionally seeks to recover damages for bad faith such as attorney fees required to prosecute this action.

## DISCUSSION

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Under Rule 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is

entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv*., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). The court evaluates lack of statutory standing under the Rule 12(b)(6) standard. *Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011).

## I. Breach of Contract

Under California law, the elements required for a cause of action for breach of contract are: (1) the existence of a contract, (2) plaintiffs' performance or excuse of nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff. *Reichert v. General Ins. Co.,* 442 P.2d 377 (Cal. 1968); *McDonald v. John P. Scripps Newspaper,* 210 Cal.App.3d 100, 104 (1989). Lloyd's alleges that Renovate's claim for breach of contract fails for two reasons: (1) Renovate's claims are not yet at "final disposition" and therefore the claim is premature, and (2) Renovate failed to obtain prior written consent before retaining defense counsel or incurring any defense costs.

### a. Final Disposition

It is well settled in the Ninth Circuit that an insurer may have a duty to advance legal fees, even if there is no duty to defend. *See Gon v. First State Ins. Co.*, 871 F.2d 863, 868 (9th Cir. 1989); *Okada v. MGIC Indem. Corp.,* 823 F.2d 276 (9th Cir.1986). Both *Okada* and *Gon* courts found that the insurer was obligated to pay the legal expenses as they were incurred by the insureds. *Gon*, 871 F.2d at 868; *Okada*, 832 F.2d at 281. However, there is no right "to the unconditional payment of costs, when those conditions were clearly and unequivocally expressed." *Okada*, 823 F.2d at 282 (9th Cir. 1986). Here, the Policy in relevant part states:

> The Insurer shall pay Loss of an Insured arising from a Claim first made against such Insured during the Policy Period or the Extended Reporting Period, if applicable, for any Wrongful Act of such Insured or of any entity or natural person for whose acts the Insured becomes legally liable, in the performance of or failure to perform Professional Services for or on behalf of any Customer.

ECF 1, Ex. A at 32. The Policy further defines "Wrongful Act" as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by an Insured or by any entity or natural person for whose acts the Insured becomes legally liable." *Id.* at 34. The Policy also defines "Defense Costs" as the following:

> [R]easonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond arising out of a covered judgment, but without any obligation to apply for or furnish any such bond), resulting solely from the investigation, adjustment, defense and appeal of a Claim against an Insured, but excluding compensation of any Individual Insured. Defense Costs shall not include any fees, costs or expenses incurred prior to the time that a Claim is first made against an Insured.

ECF 1, Ex. A at 32. The Policy further provides the following provisions on Defense Costs:

A. Defense

The Insurer does not assume any duty to defend a Claim. The Insureds shall defend and contest any Claim made against them. An Insured shall not retain defense counsel or incur any Defense Costs without the prior written consent of the Insurer, such consent not to be unreasonably withheld. An Insured may select a defense counsel different from that selected by other Insureds if such selection is required

5

> due to an actual conflict of interest and only with the express prior written consent of the Insurer.
>
> B. Advancement
>
> The Insurer shall advance Defense Costs in excess of the applicable Retention on behalf of the Insured prior to final disposition of the Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by each and every Insured, severally according to their respective interests, in the event and to the extent that any such Insured shall not be entitled under the Terms and Conditions of this Coverage Section to payment of such Loss.

ECF 1, Ex. A at 39. Here, the Policy says that it insures for acts for which the insured becomes "legally liable." Lloyd's relies on the language in the Policy which states that Defense Costs must be paid "prior to final disposition," and argues that since the Underlying Claims are not yet at the stage of final disposition, the Defense Costs do not yet need to be paid. However, the Court finds convincing the reasoning applied by both *Gon* and *Okada* courts, which held that the insurer was required to pay legal expenses "as they [were] incurred, because an insured becomes legally obligated to pay legal expenses as soon as the services are rendered." *Gon*, 871 F.2d at 868. This holding is particularly striking in *Okada* where the relevant policy included a provision that sought to exclude legal expenses from the expenses that were to be paid as incurred. *Okada*, 823 F.2d at 280. Accordingly, the Court rejects Lloyd's arguments that the Defense Costs do not need to be paid contemporaneously.

### b. Prior Written Consent

Lloyd's alleges that Renovate failed to obtain Lloyd's prior written consent as required by Section II(c) of the Policy, which states that "[a]n Insured shall not retain defense counsel or incur any Defense Costs without the prior written consent of the Insurer such consent not to be unreasonably withheld." ECF 14 at 6; ECF 1-2 at 39. The *Okada* court held that while the bank directors were entitled to contemporary payment of costs, they had no right to unconditional payment of costs "when those conditions were clearly and equivocally expressed." *Okada*, 823 F.2d at 282.

6

Here, the Policy states that Renovate is required to obtain written consent prior to hiring defense counsel or incurring fees. Section II(c) of the Policy also states the following:

> The Insurer shall not unreasonably withhold any consent required under this Coverage Section, provided that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such Claim (or any portion thereof) is not covered under the terms of this Coverage Section.

ECF No. 1, Ex. A at 39-40. Renovate alleges that the Underlying Actions were tendered to Lloyd's between April and May of 2018, and that Lloyd's provided no response. ECF No. 1 ¶¶ 18, 21. Renovate additionally alleges that Lloyd's was required to provide a coverage determination within 40 days. *Id.* ¶ 21. After several months passed, Renovate alleges that it was "left to entirely fend for itself in the selection of defense counsel." *Id*. Here, Lloyd's lack of response for months following the tendering of the Underlying Actions was unreasonable given the necessity for Renovate for respond to these complaints. Accordingly, the Court rejects Lloyd's argument that Renovate failed to obtain prior written consent due to Lloyd's unreasonable withholding of consent.

The Court additionally notes that it has yet to find a case where the issue of prior written consent as a prerequisite condition for the payment of Defense Costs has been addressed. Some courts have found that the requirement of prior written consent for certain insurance coverage provisions is obviated when the insurer denies coverage. *See e.g., Dobson v. Twin City Fire Ins. Co.*, 590 F. App'x 687, 689 (9th Cir. 2015) (insurer's wrongful denial of coverage excused insureds' failure to obtain prior consent to any settlement); *Fed. Ins. Co. v. Hawaiian Elec. Indus.*, 1995 WL 1913089, at *12 (D. Haw. Dec. 15, 1995) (same); *see also Brown v. Am. Int'l Grp., Inc.*, 339 F. Supp. 2d 336, 345 (D. Mass. 2004) (insurer's concerns motivating a consent provision were not "unwarranted" since if insurer were to pay insured, the value of any repayments from the insured would necessarily diminish over time). *Cf. Weber Distribution, LLC v. RSUI Indem. Co.*, 2018 WL 5274615, at *20 (C.D. Cal. Aug. 2, 2018) (rejecting insurer's

7

breach of contract cause of action based on insured's breach of a cooperation clause). Accordingly, Defendant's motion to dismiss the breach of contract claims is **DENIED**.[1]

## II.     Breach of Covenant of Good Faith and Dealing

Renovate alleges that Lloyd's failed to timely respond to Renovate's tender for defense coverage in the Underlying Actions, took unreasonable positions regarding the Defense Costs and defense counsel rates, and has failed to provide any payments. Renovate further alleges that Lloyd's has acted in bad faith since Renovate would suffer prejudice if it were required to change defense counsel given the ongoing litigation of the Underlying Actions. Lloyd's counters that since Plaintiff's claim fails as a matter of law since it would necessarily rely on Plaintiff's claim for breach of contract.

Under California law, "all insurance contracts contain an implied covenant of good faith and fair dealing which requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefit of the agreement." *Hanson By & Through Hanson v. Prudential Ins. Co. of Am.*, 783 F.2d 762, 766 (9th Cir. 1985) (applying California law). "An insurer may breach this covenant when it fails properly to investigate its insured's claim, or when it refuses, without proper cause, to compensate its insured for a loss covered by the policy." *Id.* (citations omitted). "When the allegations of a claim for breach of the implied covenant do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 725 (N.D. Cal. 2014) (citing *Careau & Co. v. Security Pacific Business Credit, Inc.,* 222 Cal.App.3d 1371, 1395 (1990)).

---

[1] Parties also contest the two following issues: (1) whether the near-finalized status of the *Rowe* underlying action affects Lloyd's payment obligations; and (2) whether the Defense Costs should be applied to erode the retention. Given the dismissal of the breach of contract claim on other grounds, the Court finds that it is unnecessary to address these issues.

Here, Renovate's breach of contract claim and breach of implied covenant claim rely on different acts and seek different damages. Through its breach of contract claim, Renovate seeks to address Lloyd's failure to reimburse Renovate for the attorney's fees incurred as a result of the Underlying Actions. On the other hand, through its breach of implied covenant claim, Renovate seeks to address Lloyd's actions following Renovate's requests for coverage – including, Lloyd's delayed review of invoices for the payment and attempts to apply discounted rates and other deductions to the defense costs. Lloyd's therefore seeks to recover the additional costs incurred as a result of its attempt to mitigate and remedy Lloyd's breach of contract – including, the attorney's fees incurred as a result of this instant action in this Court. In sum, the claims differ in both (1) the nature of Lloyd's alleged actions; and (2) the remedies sought.

Accordingly, Defendant's motion to dismiss Plaintiffs' claims for breach of implied covenant of good faith and fair dealing is **DENIED**.

### III. Declaratory Relief

Renovate's request for a declaration that it is entitled to past and future Defense Costs for the Underlying Claims rises and falls with the substantive claims to that effect – i.e., the breach of contract claims. The "Declaratory Judgment Act creates a remedy for litigants but is not an independent cause of action." *Cty. of Santa Clara v. Trump*, 267 F.Supp.3d 1201, 1215–16 (N.D. Cal. 2017); *see also* 28 U.S.C.A. § 2201 (referring to the Declaratory Judgment Act as "remedy"). "[E]ven if an independent cause of action for declaratory relief could be brought in state court, it cannot be brought in federal court." *Muhammad v. Berreth*, No. C 12-02407 CRB, 2012 WL 4838427, at *5 (N.D. Cal. Oct. 10, 2012). Accordingly, because the Court has denied Lloyd's motion to dismiss the breach of contract claims, the motion to dismiss the claim for declaratory relief is **DENIED**.

# CONCLUSION

Defendant's motion to dismiss the Complaint is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 10, 2019

Hon. Gonzalo P. Curiel
United States District Judge