# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENOVATE AMERICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> LLOYD'S SYNDICATE 1458; <br><br> Defendant. | CASE NO. 19-CV-1456-GPC(WVG) <br><br> ORDER ON DISCOVERY DISPUTE REGARDING PRODUCTION OF DOCUMENTS ON PLAINTIFF'S PRIVILEGE LOG <br><br> [Doc Nos. 53-54.] |

In this discovery dispute, Defendant seeks production of roughly 40 email communications Plaintiff withheld pursuant to a privilege log. These emails involve Kara Ng (mostly) and Zachary Weber, Plaintiff's former in-house counsel, and Plaintiff's insurance broker, Marsh & McLennan Insurance Agency LLC ("Marsh"). Plaintiff has invoked the attorney-client privilege as to every email communication and the work-product doctrine as to many of them. The Court finds these email communications and their attachments are covered by the attorney-client privilege.

## I. LEGAL STANDARD

State law governs attorney-client privilege issues in federal district courts sitting in diversity. Fed. R. Evid. 501; *Star Editorial, Inc. v. Dangerfield*, 7 F.3d 856, 859 (9th Cir. 1993). Under California law, "evidentiary privileges such as the

attorney-client privilege are governed by statute." *HLC Props., Ltd. v. Sup. Ct.*, 35 Cal. 4th 54, 59 (Cal. 2005). California Evidence Code section 954 confers a privilege on the client "to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer . . . ." "Confidential communications include information transmitted between attorney and client, and 'a legal opinion formed and the advice given by the lawyer in the course of that relationship.'" *Calvert v. State Bar*, 54 Cal. 3d 765, 779 (Cal. 1991) (quoting Cal. Evid. Code § 952). "The attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." *Costco Wholesale Corp. v. Sup. Ct.*, 47 Cal. 4th 725, 734 (Cal. 2009).

"The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, i.e., a communication made in the course of the attorney-client relationship." *Id.* at 733. "Once that party establishes facts necessary to support a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the claim of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply." *Id.* (citing Cal. Evid. Code § 917(a)); *Wellpoint Health Networks, Inc. v. Sup. Ct.*, 59 Cal. App. 4th 110, 123-24 (Cal. Ct. App. 1997).

"[T]o determine whether a communication is privileged, the focus of the inquiry is the dominant purpose of the relationship between the parties to the communication. Under that approach, when the party claiming the privilege shows the dominant purpose of the relationship between the parties to the communication was one of attorney-client, the communication is protected by the privilege." *Clark v. Sup. Ct.*, 196 Cal. App. 4th 37, 51 (Cal. Ct. App. 2011) (citing *Costco*, 47 Cal. 4th 739-40).

## II. DISCUSSION

The Court's first task is to determine whether Plaintiff, as the party invoking the attorney-client privilege, has met its burden to make a *prima facie* showing of applicability of the privilege. In doing so, the Court looks to the dominant nature of the relationship between Plaintiff, Ng, and Weber to determine whether an attorney-client relationship existed *ab initio* such that it could extend to communications with Marsh. There is no dispute that Ng and Weber were attorneys employed by Plaintiff in its legal department or that their roles included advising Plaintiff on legal matters and facilitating its legal affairs. Their roles necessarily included monitoring, coordinating, and advising on pending litigation against Plaintiff as well as doing these same tasks with respect to insurance coverage related to litigation. As such, Ng's and Weber's roles and relationships with Plaintiff were that of the quintessential attorney and client. Thus, any communications amongst Ng, Weber, and Plaintiff are shielded by the attorney-client privilege.

Turning to the heart of the dispute now before the Court, the question is whether any communications between Ng or Weber *and Marsh* also enjoy the protection of the attorney-client privilege given that Marsh is a third-party, and disclosure of privileged communications to third parties ordinarily destroys the otherwise privileged nature of the communications. *Pac. Pictures Corp. v. U.S. Dist. Ct.*, 679 F.3d 1121, 1126-27 (9th Cir. 2012). That is, however, unless that third party "further[s] the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information . . . ." Cal. Evid. Code § 952; *see also Atmel Corp. v. St. Paul Fire & Marine Ins. Co.*, 409 F. Supp. 2d 1180, 1181 (N.D. Cal. 2005); *Ins. Co. of N. Am. v. Super. Ct.*, 108 Cal. App. 3d 758, 765, 166 Cal. Rptr. 880 (Cal. Ct. App. 1980) ("While involvement of an unnecessary third person in attorney-client communication destroys confidentiality, involvement of third persons to whom disclosure is reasonably necessary to further the purpose

of the legal consultation preserves confidentiality of communication."). The first of California Evidence Code section 952's disjunctive test is relevant in this case.

The Court agrees that *Amtel* "does not stand for the proposition that any communications between a party's insurance broker and its counsel is [automatically] protected . . . ." (Doc. No. 54 at 3-4.) However, based on the declarations submitted in briefing and the Court's review of the documents lodged *in camera*, Marsh's inclusion in communications on behalf of Plaintiff clearly was to further Plaintiff's interests. Specifically, as Plaintiff's in-house counsel responsible for coordinating, monitoring, and evaluating ongoing litigation against Plaintiff and subsequently advising Plaintiff on the same, Ng and Weber's communications with Marsh in furtherance of those tasks with respect to insurance coverage Plaintiff had secured were in turn made in furtherance of the Plaintiff's overarching interest in funding and defending litigation brought against Plaintiff. The legal intricacies and requirements of satisfying insurance coverage were part and parcel of that overarching interest, and Marsh clearly assisted Ng and Weber in those areas on an ongoing basis. The Court's *in camera* review revealed Marsh's role in guiding and advising Ng as Plaintiff sought coverage for defense costs being incurred on a daily basis in the *Nemore* and *Rowe* matters among other litigation matters. Thus, Marsh's role wasn't simply to procure insurance contracts for Plaintiff but appears to have extended beyond that to advising Plaintiff's in-house counsel on litigation-related insurance claims and procedures. And many of the communications the Court has reviewed appear to have been reasonably necessary because Ng often sought information and Marsh's advice and assistance with these matters. Marsh, as an experienced insurance broker, appears to have been an important entity that helped Ng with these matters.

Any reliance in this case on *Rainbow Sandals, Inc. v. Liberty Mut. Ins. Co.* is misplaced because the party seeking protection in that case apparently relied only on the work-product doctrine to shield its email communications with the insurance

broker. *See* No. SACV 14-01665-JLS(DFMx), 2015 U.S. Dist. LEXIS 186833, *1 (C.D. Cal. Aug. 25, 2015) ("Defendant . . . moves for an order compelling . . . the production of four e-mails withheld by Plaintiff . . . on the grounds of attorney work product doctrine . . . ." & "Rainbow's privilege log identifies four e-mails . . . as withheld from its production under the attorney work product doctrine."). The court in that case found the emails were not exchanged in anticipation of litigation and thus found the work-product doctrine did not apply. And since that party had not also asserted the attorney-client privilege, there was no fallback position for the court to consider. Here, in contrast, Plaintiff asserts the attorney-client privilege as to every withheld email and also claims work-product protection for most emails. Even if the Court found the work-product doctrine did not apply to any of the emails, the attorney-client privilege is broader and does not require communications be made in anticipation of litigation. For this reason, *Rainbow Sandals, Inc.* is inapposite here, as it did not involve the assertion of the attorney-client privilege to emails to an insurance broker. In any event, given the Court's finding that the attorney-client privilege applies here, it is unnecessary to also consider the work-product doctrine.

### III. CONCLUSION

The Court finds an attorney-client relationship existed between Ng, Weber, and Plaintiff; that their communications were protected by the attorney-client privilege; and that disclosures and communications with Marsh did not destroy that privilege. Accordingly, the Court ORDERS that Plaintiff need not disclose the documents in its privilege log.

IT IS SO ORDERED.

DATED: September 15, 2020

Hon. William V. Gallo
United States Magistrate Judge